IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CIVIL ACTION FILE NO. 3:17-CV-00740-FDW-DSC

| DAVID A. JOHNSON and ALDA, INC., | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF DEFENDANT** |
| v. | ) | **ITALIAN SHOEMAKERS, INC.'S** |
| | ) | **MOTION FOR SANCTIONS:** |
| ITALIAN SHOEMAKERS, INC., | ) | **DISMISSAL** |
| | ) | |
| Defendant. | ) | |

Defendant, Italian Shoemakers, Inc. ("Defendant"), through counsel, submits this Memorandum of Law in Support of Defendant's Motion for Discovery Sanctions: Dismissal. Defendant asks this Court to sanction Plaintiffs under Federal Rule of Civil Procedure 37(b)(2) by dismissing this action or, in the alternative, using its inherent power.

## BACKGROUND

On January 26, 2018, the Court entered its Case Management Order ("CMO"), setting pertinent deadlines, including deadlines for the parties to exchange Rule 26 initial disclosures (February 5, 2018) and for the completion of discovery (July 16, 2018). (Dkt. 7).

Defendant served Plaintiffs with its First Set of Interrogatories and Requests for Production of Documents in May 2018 ("Discovery Requests"), with Plaintiffs responses due June 30, 2018. Plaintiffs objected on relevance grounds, and produced no response or documents to three Interrogatories and seven Requests for Production of Documents. Moreover, the documents Plaintiffs did produce were

hardly responsive. For example, Plaintiffs produced a flash drive containing "predominately . . . emails," which had been "converted to PDF format, [we]re arranged alphabetically by subject line without reference to the applicable discovery request, and [were] missing attachments for emails that indicate they have attachments." (Dkt. 11, ¶5). On August 2, 2018, as a result of Plaintiffs' incomplete and inaccurate responses, Defendant filed a Motion to Compel, as ordered by the Court. (Dkt. 11).

On August 9, 2018, this Court granted Defendant's Motion to Compel in part. (Dkt. 17). As the Order states: Plaintiffs initially produced more than 6,000 PDF pages of emails on a flash drive. (Dkt.17, at *2). Plaintiffs later produced two *additional* flash drives, which, the undersigned now estimates, contained an additional 1,000 PDF pages of emails. (Dkt. 17, at *3).

In granting Defendant's Motion to Compel, the Court observed that Plaintiffs' email production—*i.e.*, giving Defendant thousands of pages of PDF documents without metadata—did not comply with Chief Judge Whitney's Standing Order on Protocol for Discovery of Electronically Stored Information, which generally requires the production of emails in native format with metadata. *See* Misc. No. 3:07MC47 ¶11(D) (W.D.N.C. May 14, 2007) (the "Standing Order"). Thus the Court directed Plaintiffs to "produce all responsive documents in the manner in which they are maintained in the usual course of business or by labeling each document to correspond with the applicable request" by August 14, 2018. (Dkt. 17, at *3 ¶B).

Despite the clear directive, Plaintiffs failed to comply with the Court's Order. Instead, Plaintiffs: produced one document with "notes" related to Defendant's Discovery Requests, which had no case caption and was not signed as is required by Rule 33, (Dkt. 20, ¶21); produced emails in non-native format (*i.e.* PDF without metadata) and severed from them any relevant attachments, (Dkt. 20, ¶¶23, 25); failed to identify certain documents—produced in a non-native format—as responsive to any of Defendant's Discovery Requests, (Dkt. 20, ¶25); and transmitted this flawed production in three different methods, none of which complied with the Court's Order, further compounding the time and burden placed on Defendant to review duplicative and deficient document productions (Dkt. 20, *2-3).

Consequently, Defendant's counsel notified Plaintiffs' counsel of the persistent problems and Defendant's intentions to move for sanctions. (Dkt. 27-1, *5-6.) Receiving no response, Defendant filed a Motion for Sanctions for Failure to Comply with a Court Order on August 24, 2018. (Dkt. 20.) Therein, Defendant asked that the Court sanction Plaintiffs by, among other things, dismissing the Complaint and awarding Defendant its attorney's fees.

On October 23, 2018, the Court granted Defendant's Motion for Sanctions and ordered Plaintiffs "to produce all discovery requests[sic], including attachments, in usable form by the close of business on October 24, 2018." (Dkt. 33, at *7.) The Court also chastised Plaintiffs' repeated attempts "to supply emails in PDF form" and "fail[ure] to correctly label each document to correspond to the

respective discovery requests." (Dkt. 33, at *6). Notwithstanding, the Court denied Defendant's request for dismissal. (Dkt. 33, at *3 n.2). Significantly, the Court did not decline dismissal because it did not find bad faith; rather, the Court "decline[d] to make a finding of bad faith *because the Court denie[d] Defendant's request to impose dismissal*." (Dkt. 33, at *3 n.2). The Court also awarded Defendant attorney's fees arising from its Motion to Compel, Motion for Sanctions, and "any ongoing attorney fees related to this discovery." (Dkt. 33, at *6).

During the afternoon of October 24, 2018, Plaintiff delivered to the undersigned four boxes, consisting of approximately 7,000 emails and attachments (according to Plaintiffs' counsel's estimation). Defendant learned about Plaintiffs' intent to produce printed documents from Plaintiffs' counsel minutes before the boxes were delivered. *See* Ex. 1.

Rather than confer with the undersigned in an effort to understand what Defendant needed or expected following this Court's Order, Plaintiffs unilaterally elected to again produce documents in the manner they deemed appropriate, this time in print. Contemporaneous with this delivery, Plaintiffs' counsel represented to the undersigned that Plaintiffs utilize Gmail, not an Outlook-based email program, and, thus, Plaintiffs' prior productions of emails as PDF were in native format. *See* Ex. 1. Again, Plaintiffs ignored the Court's Orders and engaged in conduct clearly counter to the Federal Rules of Civil Procedure, established Fourth Circuit case law, and the Standing Order.

4

Upon review of the documents delivered to the office of the undersigned yesterday, the following is apparent:

- Though Plaintiffs produced 7,000 emails, the document production consists of more than 10,000 individual pages;

- Some of the documents are Bates-stamped. However, many are not;

- The documents containing Bates labeling are not produced sequentially. For instance, documents responsive to Request for Production 22 begin with Bates No. DAJ08896 through DAJ08929. Following the document bearing Bates No. DAJ08929, and without a slip sheet to provide explanation as to the nature or content of the document, comes the document bearing Bates No. DAJ09477 (which appears to be completely unrelated to the document appearing at DAJ08896-DAJ08929). Later, and in response to the same Request No. 22, the Bates numbers inexplicably decrease to DAJ08700, then inexplicably increase to DAJ08971. For instance, the document bearing Bates No. DAJ08895 is followed by the document bearing DAJ08852;

- Concerning those documents produced *without* Bates numbers: The document bearing Bates No. DAJ08951 reads only "DOCUMENTS PRODUCED IN NATIVE FORMAT 2017-04-11-Jeco 4-11-17 Attachments." This document is accompanied by nine pages (printed front and back) of unnumbered, incomprehensible documents. (*See* Ex. 3.) DAJ08951 partially appears to be a spreadsheet, but it is printed front and back with columns split apart between pages, words are cut-off, and it is near impossible to make sense of the paper spreadsheet. Moreover, this particular document (DAJ08951) appears to be an email attachment to DAJ08952; however, as Exhibit 3 demonstrates, DAJ08952 appears by itself, is preceded by DAJ08969, and followed by DAJ08950, yet the attachment (DAJ08951) does not appear until after DAJ08950. This is merely one example of the widespread problems with this production.

On the evening of October 24, 2018, the undersigned contacted Plaintiffs' counsel asking that Plaintiffs produce in native format the nearly 10,000+ pages of documents produced in print earlier that same day. *See* Ex. 2. Plaintiffs responded on October 25, 2018 by admitting for the first time that production in native format was possible and that an IT professional was headed to

his office.  Later in the afternoon of October 25, 2018, Plaintiffs' counsel wrote to the undersigned granting access to two Gmail accounts maintained by Plaintiffs.  See Ex. 5. This belatedly-granted unfettered access to documents, some of which are responsive and some of which are not, after the deadline imposed by the Court's Order, does not comply with the Court's mandate and creates insurmountable prejudice to Defendant.  (Dkt. 33; Dkt. 39, ¶14).

In short, Plaintiffs hoped to conduct the trial of this action by ambush by denying Defendant a meaningful opportunity to review and use the information.  Given Plaintiffs' recalcitrance and repeated non-compliance, Defendant is left with no option but to ask this Court to dismiss Plaintiffs' claims *with prejudice*.

## ARGUMENT

### I. Legal Standard

There are two routes by which this Court may dismiss Plaintiffs' claims.  Rule 37(b) provides that, where a party disobeys a Court's discovery order, the Court may "dismiss[] the action or proceeding in whole or in part."  Fed. R. Civ. P. 37(b)(2)(A)(v).  The Court may also dismiss Plaintiffs' claims as part of its inherent powers.  *See generally Projects Mgmt. Co. v. Dyncorp Int'l, LLC*, 734 F.3d 366 (4th Cir. 2013).  This power does not come from the Federal Rules of Civil Procedure; rather, it comes from "the very nature of the court as an institution." *Id.* at 373 (quoting *U.S. v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993)).  The tests for these two avenues differ slightly; however, both remedies are well within

this Court's discretion.  *See id.*; *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989).

## II. The Court Should Dismiss Plaintiffs' Claims Under Rule 37(b).

Rule 37(b) allows the Court to dismiss Plaintiffs' claims for failure to comply with the Court's August 9, 2018 Order (Dkt. 17), and the Court's October 23, 2018 Order (Dkt. 33) if the Court finds: (1) that Plaintiffs acted in bad faith; (2) that Defendant will be prejudiced by Plaintiffs' noncompliance; (3) that the Court needs to deter "the particular sort of non-compliance"; and (4) "whether less drastic sanctions would have been effective." *Anderson v. Found. for Adv., Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998); *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 92.  These factors weigh in Defendant's favor.

*First*, Plaintiffs' repeated failure to comply with the Court's directives, specifically the Standing Order and more recent Orders, demonstrates bad faith. Plaintiffs have produced not once, but twice, a voluminous number of emails in a non-native—*e.g.*, printed—format.  Plaintiffs continue to maintain that, because they use Gmail and not an Outlook-based email client, that production in native format is impossible or that production in PDF or paper copy constitutes native format. Ex. 1. That is simply not true and a brief review of the Standing Order or case law in this jurisdiction clarifies what is required.  *See* Dkt. 21, *7-8**;** Dkt. 27, *5.  Using Google, the undersigned found numerous websites detailing how to use a Gmail-provided service to produce emails sent through that application in native format, called MBOX format.  Producing Gmail emails in native format is simply a

matter of logging into one's Gmail account and using a free program available within Google.

Further evidencing Plaintiffs' bad faith, their most recent production—a disorganized document dump of 10,000+ pages—comes fewer than two weeks before the trial of this action is scheduled to begin. Plaintiffs foisted on Defendant a collection of documents, many of which are out of order (without explanation), mislabeled, or not labeled at all. Given Plaintiffs' history of non-compliance with this Court's Orders, Defendant believes Plaintiffs are attempting to stall production in an effort to prejudice Defendant's preparation for trial.

Even more concerning, in response to an email the undersigned sent to Plaintiffs' counsel outlining the persistent problems that plague Plaintiffs' October 24, 2018 paper production, Plaintiffs' counsel:

>   a) admitted that some documents in the production may be out of order, but appeared apathetic by the disorganization of the voluminous production;
>   
>   b) reported that he "checked with the Court" about the production and that the Court told him Plaintiffs "can produce hard copies in lieu of a drive";
>   
>   c) notified Defendant, for the first time, that Plaintiffs "*found* additional, responsive documents that were added to the copies . . . and insert[ed] them manually" into the 10,000+ page production without any numbering, which strips Defendant of

        any reasonable opportunity to locate these newly found responsive documents which have been produced for the first time ten days before trial;

    d) represented that Defendant has a "copy of every single communication in [Plaintiffs'] computer[,]" which shows Plaintiffs likely produced substantially more documents than are responsive or relevant to Defendant's discovery requests in an effort to inundate Defendant with documents on the eve of trial; and,

    e) informs Defendant that Plaintiffs are expecting a "computer expert" to arrive to Plaintiffs' counsel's office on the morning of October 25, 2018 (after the Court's deadline to produce the electronic discovery) to assist with producing the documents in native form.

*See* Ex. 4 (emphasis added). Plaintiffs' response demonstrates their bad faith and repeated effort, whether intentional or with willful ignorance, to disobey the Orders of this Court and the Federal Rules of Civil Procedure, all while forcing Defendant to a trial by ambush.

    Moreover, Plaintiffs have demonstrated that they have no concern with complying with the Court's Order. Rather than contact the undersigned to confer about what was needed or expected following this Court's October 23, 2018 Order, Plaintiffs delivered to the undersigned more than 10,000 pages. Plaintiffs insisted

on doing so, notwithstanding the fact that the Court sanctioned this very conduct when Plaintiffs failed to comply with the Court's August 9, 2018 Order.

*Second*, Plaintiffs' non-compliance with this Orders prejudices Defendant. Plaintiffs have produced in paper format more than 10,000 pages of documents, many of which are out of order, ambiguously labeled, or lacking Bates stamps entirely. It is unreasonable for Plaintiffs to expect Defendant to organize their document production and digest that production with less than two weeks before trial. Additionally, Plaintiffs produced "newly found" responsive documents on October 24, 2018, neglected to bates-stamp or set them apart so that Defendant would know, and instead, stuck them into the 10,000+ document production, depriving Defendant of any meaningful way to retrieve these newly found responsive documents.

*Third*, the Court should take care to deter this type of non-compliance. Plaintiffs have repeatedly demonstrated, at best, willful ignorance and, at worst, intentional conduct designed to ambush Defendant at trial. They have plainly tried to circumvent this Court's Orders, unapologetically. *See, e.g.*, Dkt. 33, *2, n.1. This fact is evidenced by Plaintiffs' production of emails in non-native format not once, but *twice*, in response to this Court's August 9, 2018, and October 23, 2018 Orders. Plaintiffs' blatant disregard for the Court's Orders warrant imposition of the strongest sanction.

*Fourth*, and finally, a less drastic sanction will not achieve any deterrent effect. In its October 23, 2018 Order, the Court taxed Plaintiffs with the

10
Case 3:17-cv-00740-FDW-DSC   Document 40   Filed 10/25/18   Page 10 of 14

cost of Defendant's Motion to Compel, Motion for Sanctions, and on-going reasonable attorneys' fees for Failure to Comply with a Court Order. Despite the imposition of these costs, Plaintiffs have not relented from their unnecessarily hostile position. Rather, Plaintiffs have unapologetically delivered more than 10,000 printed pages of electronically stored information in a disorderly, antiquated fashion to the undersigned fewer than two weeks before trial.

For those reasons, Defendant asks that the Court dismiss Plaintiffs' claims with prejudice under Rule 37(b).

### III. The Court Should Dismiss Plaintiffs' Claims Using Its Inherent Power.

This Court has the "inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates." *Projects Mgmt. Co.*, 734 F.3d at 373 (quoting *Shaffer Equip.*, 11 F.3d at 461). That inherent power "includes the ability to order dismissal of a case." *Id.* "Orders of dismissal are appropriate when a party … abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *Id.* (internal quotation marks omitted) (quoting *Shaffer Equip.*, 11 F.3d at 462).

To dismiss a case using its inherent power, "a court must consider":

(1) the degree of the wrongdoer's culpability;

(2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney;

(3) the prejudice to the judicial process and the administration of justice;

(4) the prejudice to the victim;

(5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and

(6) the public interest.

*Shaffer Equip.*, 11 F.3d at 462–63 (the "*Shaffer* factors").

The first and second *Shaffer* factors weigh in favor of dismissal. As detailed at length above, Plaintiffs have abused the discovery process, using it to prejudice Defendant in anticipation of trial. For instance, Plaintiffs have repeatedly produced discovery in non-native format, including most recently producing electronically stored information (*i.e.*, emails) in paper copy; produced mislabeled or un-labeled discovery in non-sequential order; and produced newly found responsive documents less than two weeks before trial and hid it within the 10,000+ page paper production. It is clear that Plaintiffs' counsel is not solely to blame. Rather, Plaintiff Johnson has been intimately involved, finding new responsive documents and slipping them into the production on the eve of trial without separately supplementing as required by Rule 26(e).

Furthermore, the third and fourth *Shaffer* factors weigh in favor of dismissal. Plaintiffs have consistently defied the Rules of Civil Procedure and this Court's Orders in an effort to prejudice Defendant in anticipation of trial. The effects of that prejudice, are both real and substantial. Without sanctions, Defendant will be forced to either move for a continuance of trial—relief this Court already denied once—or to scour through 10,000+ pages of documents in an effort to properly label and digest them in advance of the anticipated November 5, 2018,

trial date, which is not reasonably possible given the format of the production. (*See also* Dkt. 39, ¶14),

Finally, the fifth and sixth *Shaffer* factors weigh in Defendant's favor. No less drastic sanction will do. For the reasons discussed above, less drastic sanctions have not deterred Plaintiffs' misconduct to date. Similarly, the public interest favors dismissal. Plaintiffs' repeated discovery abuses and trial by ambush tactics harm the public's trust in the judiciary and waste valuable judicial resources.

Accordingly, the *Shaffer* factors weigh in favor of dismissal.

## CONCLUSION

For those reasons, Defendant asks that this Court sanction Plaintiffs by dismissing Plaintiffs' claims with prejudice, awarding Defendant its reasonable attorneys' fees incurred in connection with this Motion, and order such other relief as the Court deems appropriate.

Respectfully submitted, this the 25th day of October, 2018.

*/s/ Hayley R. Wells*
Hayley R. Wells
N.C. State Bar I.D. No.: 38465
email: hrw@wardandsmith.com
Devon D. Williams
N.C. State Bar I.D. No.: 44914
email: ddwilliams@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 2020
Asheville, NC 28802-2020
Telephone: 828.348.6070
Facsimile: 828.348.6070
Attorneys for Defendant Italian Shoemakers, Inc.

CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ITALIAN SHOEMAKERS, INC.'S MOTION FOR SANCTIONS: DISMISSAL with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

William L. Sitton, Jr., Esq.

This the 25th day of October, 2018.

*s/ Hayley R. Wells*
Hayley R. Wells
N.C. State Bar I.D. No.: 38465
email: hrw@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 2020
Asheville, NC 28802-2020
Telephone: 828.348.6070
Facsimile: 828.348.6070
Attorneys for Defendant Italian Shoemakers, Inc.

ND: 4811-9733-1577, v. 2